* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence. Upon reconsideration the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On October 21, 2003, plaintiff was a sole proprietor doing business as Morgan's Cable Splicers, Inc. (hereinafter "Morgan's Cable.")
4. On October 21, 2003, an employment relationship existed between plaintiff and Morgan's Cable.
5. Capital City Insurance Company is the carrier on the risk and Southeastern Claims Services, Inc. is the third-party adjusting agency.
6. On October 21, 2003, plaintiff sustained a compensable injury by accident and contends that his accident resulted in injuries to his left leg and hip, left foot, left arm, neck and back.
7. Defendants filed a Form 60 accepting plaintiff's October 21, 2003 injury by accident as compensable.
8. Defendants have paid for plaintiff's medical treatment. As of the date of the Deputy Commissioner's hearing, plaintiff was not aware of any unpaid medical expenses that were associated with any care or treatment, whether or not specifically authorized.
9. Plaintiff certifies that he is not aware of and that he has not put Morgan's Cable and/or its agents on notice of any liens that may be asserted by any child support agency and/or by any other attorney. *Page 3 
10. Plaintiff's treating physician opined that as of February 7, 2005, plaintiff reached maximum medical improvement.
11. The parties participated in a mediated settlement conference on August 8, 2005, which resulted in an impasse. Defendants have paid the mediator's fee of $525.00.
12. Plaintiff's date of birth is May 7, 1963, and he was 42 years old as of the date of the pre-trial agreement herein.
13. The following exhibits were admitted into evidence at the hearing before the Deputy Commissioner:
 a. The Medical Record Index,
 b. Industrial Commission Forms 18 (x2), 33, 33R, 60 and 90s (x4), and the Industrial Commission's Administrative Order regarding discovery, dated September 6, 2005,
 c. Plaintiff's Answers to Defendants' first Set of Interrogatories and Request for Production of Documents,
 d. Plaintiff's recorded statement given on November 18, 2003,
 e. Plaintiff's federal tax returns for the 2002 and 2003 tax years, and
 f. Plaintiff's Exhibit #1: plaintiff's earnings and attendance during the year preceding his compensable accident and injuries.
14. On November 23, 2005, the Deputy Commissioner entered an Order Directing Employee to Produce Copies of Employee's 2000 and 2001 Federal Tax Returns; however, the tax returns for those years were not produced.
15. The issues before the Full Commission include: plaintiff's correct average weekly wage, the compensation plaintiff is entitled to receive, the body parts plaintiff injured, and the *Page 4 
degree of permanent partial disability that plaintiff sustained as a result of the October 21, 2003 injury.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 42 years old. Plaintiff is a high school graduate and has work experience in the construction industry.
2. On October 21, 2003, plaintiff sustained a compensable injury by accident after falling to the ground from a ladder. The accident resulted in permanent damage to plaintiff's left leg, left foot, and left arm. Plaintiff alleges and defendants deny that as a result of the accident on October 21, 2003, he also sustained permanent injuries to his neck and back.
3. Defendants admitted the compensability of plaintiff's October 21, 2003 accident by filing a Form 60. Defendants paid temporary total disability compensation to plaintiff at the rate of $261.58 based on an average weekly wage of $392.35.
4. On November 10, 2003, Dr. Langdon Hartsock, an orthopedic surgeon in Charleston, South Carolina, first saw plaintiff as a follow up to his October 21, 2003 injury. On November 20, 2003, Dr. Hartsock performed an internal fixation surgery on plaintiff's left elbow fracture. Plaintiff continued to treat with Dr. Hartsock and his associates through February 7, 2005.
5. In a letter dated February 14, 2005, Dr. Hartsock found plaintiff was at maximum medical improvement for his hip, elbow, and foot injuries as of February 7, 2005. Dr. Hartsock felt that plaintiff could return to work with restrictions. He assigned plaintiff a 50% impairment *Page 5 
of his foot, a 37% impairment rating to the lower extremity, and a 30% impairment to his elbow. He also anticipated that plaintiff could require a future subtalar fusion. Dr. Hartsock's ratings were based on the American Medical Association (AMA) Rating Guide and Dr. Hartsock testified that he would defer to a North Carolina physician regarding plaintiff's ratings. While Dr. Hartsock's opinions are helpful to understanding the nature of plaintiff's injuries, the course of plaintiff's medical treatment, and the general nature of plaintiff's current physical restrictions, the Full Commission finds that Dr. Hartsock's ratings are not consistent with North Carolina's Rating Guide and must be given little weight.
6. On May 4, 2005, Dr. Donald Getz, an orthopedic surgeon in Wilmington, North Carolina, performed an independent medical evaluation (IME) on plaintiff. Dr. Getz testified at his deposition that plaintiff could return to gainful employment with some lifting restrictions, but could not perform the physical requirements of his prior occupation. In his medical report and using the AMA guidelines, Dr. Getz found plaintiff had a zero percent rating to his left hip, a ten percent rating to his whole person for the calcaneus fracture to the left foot, and a six percent rating to his left elbow, resulting in a combined rating of 15% for the whole person. At his deposition and based on the North Carolina Rating Guide, Dr. Getz stated that plaintiff would have a five percent rating to his elbow and five percent to his foot. Regarding plaintiff's hip, Dr. Getz could not assign a rating under the North Carolina Rating Guide, as the impairment was so minimal that it might not warrant a rating.
7. Plaintiff has not undergone additional medical treatment with Dr. Getz or Dr. Hartsock for his left leg, left foot, or left arm conditions.
8. The Full Commission finds that plaintiff suffers some permanent partial disability to his left leg that is independent of plaintiff's rating to his left foot. Dr. Getz's opinions are *Page 6 
reasonable, but, in order to reconcile the opinions of Dr. Getz and Dr. Hartsock, the Commission finds that the degree of impairment plaintiff sustained is a reasonable compromise between the disparate opinions. Thus, the Commission finds that plaintiff sustained a five percent permanent partial disability to his left leg, a ten percent permanent partial disability to his left foot, and a ten percent permanent partial disability to his left arm.
9. Plaintiff alleges that in addition to the injuries to his left leg, left foot, and left arm, he also sustained permanent injuries to his neck and back as a result of the October 21, 2003 injury by accident. However, there is insufficient evidence of record from which to prove by the greater weight that plaintiff's neck and back conditions are causally related to the compensable injury by accident. Plaintiff did not complain about his back to Dr. Hartsock until February 7, 2005, approximately one year and three months after plaintiff first saw Dr. Hartsock. Dr. Hartsock did not render any causation opinion regarding plaintiff's neck and back injuries and whether they were caused by plaintiff's October 21, 2003 injury and did not give plaintiff any impairment rating for his neck or back. In his IME report, Dr. Getz noted that plaintiff's neck and back "complaints were not recognized during his treatment nor accepted as associated with his injury of 10/21/2003." In addition, plaintiff did not list any injuries to his neck or back on a Form 18 dated November 1, 2003 or on another Form 18 and 19 on November 12, 2003. Thus, the Full Commission finds that plaintiff's neck and back injuries were not related to his injury by accident on October 21, 2003.
10. Plaintiff has not worked since October 21, 2003. At the time of the Deputy Commissioner's hearing, plaintiff was working with vocational rehabilitation assistance to look for employment within his restrictions. Plaintiff testified that he experiences pain when he walks, stands or sits for very long and that he squats down to relieve pain in his knees and back. *Page 7 
Plaintiff explained that he can walk for at least 30 minutes but that he has to stop and give his left foot a break. When he is inside the house, he lies down because of pain in his neck, back, foot and hip. Plaintiff did not feel that he could return to work as a cable splicer or carpenter. Plaintiff testified that he called ten people or businesses a week looking for a job, and that he went on job interviews set up by Manpower, a temporary employment agency. Prior to the vocational case manager becoming involved with his claim, plaintiff had not looked for work. On cross-examination, plaintiff testified that he has been directing his efforts toward getting his back and neck fixed and that the only reason he is looking for a job is to comply with vocational rehabilitation so he does not lose his benefits. Plaintiff stated that he did not want to return to work because of the pain in his foot, neck and back.
11. Rachel Boling, a certified rehabilitation counselor, first contacted plaintiff by letter dated August 10, 2005 and stated that she would be working with him. Ms. Boling testified that plaintiff has a drivers' license, reliable transportation, the skills to run his own business, and that he possesses sufficient transferable skills to make him generally employable in the local economy. Ms. Boling testified, however, that plaintiff is not participating in vocational rehabilitation in good faith and that plaintiff is not making a diligent effort to return to work. Ms. Boling testified that plaintiff has not made a reasonable effort to find employment for the following reasons: plaintiff refused to sign an individualized vocational rehabilitation plan, complained of multiple medical problems, created scheduling problems, alleged undocumented impediments (such as a criminal record) to a return to work in specific fields, insisted upon an unreasonably high hourly rate of pay, and indicated his intention to move to a different labor market. Ms. Boling was the only expert to offer testimony concerning plaintiff's vocational *Page 8 
capacity. Based upon Ms. Boling's testimony, the Commission finds that plaintiff failed to make reasonable efforts to find employment.
12. Both Dr. Hartsock and Dr. Getz testified and the Full Commission finds that plaintiff's injuries to his left leg, left foot, and left arm preclude plaintiff from returning to work and earning wages in the employment in which he was injured. However, neither Dr. Hartsock nor Dr. Getz offered testimony that plaintiff's injuries prevent him from returning to other work and earning wages in other employment. In addition, Ms. Boling testified that plaintiff has wage earning capacity and that he is capable of securing employment. Thus, the Commission finds that plaintiff is physically capable of performing some work and earning wages in other employment.
13. Through the date of the filing of the Deputy Commissioner's Opinion and Award, including those weeks since plaintiff achieved maximum medical improvement, plaintiff has received compensation at the rate of $261.58 per week, based upon an average weekly wage of $392.35 per week, as shown on the Form 60. Defendant-employer did not keep accurate records of wages paid to plaintiff, and therefore defendants are unable to submit a Form 22 Wage Statement. Plaintiff, whose business was a sole proprietorship, alleges that his average weekly wage is $1,371.98 and that in 2003 he only worked 28 weeks of the 52-week period preceding his compensable injuries. In support of this allegation, plaintiff prepared a summary of wages he reportedly earned from October 25, 2002 until November 6, 2003. The summary prepared by plaintiff is not supported by the documentary evidence, including plaintiff's recorded statement and testimony, Industrial Commission forms, and federal tax returns, all of which tend to establish that plaintiff worked consistently and that plaintiff's average weekly wage is much lower than $1,350.00 per week. *Page 9 
14. Plaintiff testified and his federal tax returns show that during 2002 and 2003, he had significant business expenses. The Full Commission finds that it would not be fair or just to compute plaintiff's average weekly wage by simply dividing plaintiff's gross receipts by the number of weeks in 2003 that preceded his injuries, since the nature of plaintiff's sole proprietorship requires consideration of business expenses incurred in producing revenue. Because the evidentiary record does not include a properly completed Form 22 or accurate payroll records showing wages earned and dates worked, plaintiff failed to provide evidence to show by its greater weight that his average weekly wage as shown on the Form 60 and paid by defendants for over two years is incorrect. Therefore, the Commission finds that plaintiff's average weekly wage is $392.35 per week, an amount which most nearly approximates the amount plaintiff would be earning were it not for his injuries.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident to his left arm, left leg, and left foot arising out of and in the course of his employment on October 21, 2003. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff did not sustain an injury by accident to his neck or back on October 21, 2003. N.C. Gen. Stat. § 97-2(6); Holley v. Acts,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
3. Plaintiff's average weekly wage is $392.35, which yields a compensation rate of $261.58 per week. N.C. Gen. Stat. § 97-2(5). *Page 10 
4. Defendants admitted the compensability of plaintiff's injury by accident on October 21, 2003 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
5. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
6. In the present case, Dr. Hartsock released plaintiff to return to work with restrictions as of February 7, 2005. Plaintiff did not prove that after February 7, 2005, he was unable to obtain employment after a reasonable effort or that it was futile for him to seek *Page 11 
employment because of other factors. He was capable of some work and no doctor took him out of work. Plaintiff's disability, if any, after February 7, 2005, is related to non-work related conditions. N.C. Gen. Stat. § 97-29; Russell v. Lowes Product Distribution, supra.
7. As a result of plaintiff's injury by accident on October 21, 2003, plaintiff was disabled and entitled to temporary total disability compensation at a rate of $261.58 per week from October 21, 2003 until February 7, 2005. N.C. Gen. Stat. § 97-29.
8. As a result of his injury by accident on October 21, 2003, plaintiff sustained permanent injuries to his left leg, left foot, and left arm. Plaintiff did not sustain permanent injuries to his neck or back. As a result of his injuries, plaintiff is entitled to the following permanent partial disability ratings: five percent to the left leg, ten percent to the left foot, and ten percent to the left arm. Defendants are entitled to a credit for any temporary total disability compensation paid plaintiff after February 7, 2005. N.C. Gen. Stat. §§ 97-31(13), (14), (15).
9. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of his compensable injuries to his left leg, left foot, and left arm as may be required to effect a cure, provide relief, or lessen the period of disability. Plaintiff is not entitled to medical treatment for his neck and back. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendants shall pay plaintiff compensation for temporary total disability at the rate of $261.58 per week, from *Page 12 
October 21, 2003 until February 7, 2005. This compensation has already been paid by defendants.
2. Subject to a reasonable attorney's fee approved below, defendants shall pay plaintiff permanent partial disability compensation for the five percent impairment to the left leg at the rate of $261.58 for 10 weeks, the ten percent impairment to the left foot at the rate of $261.58 for 14 weeks, and the ten percent impairment to the left arm at the rate of $261.58 for 24 weeks. Defendants are entitled to a credit for any compensation paid plaintiff after February 7, 2005.
3. A reasonable attorney fee of 25% of the compensation, if any, after the credit is taken, due plaintiff under paragraph 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Defendants shall pay for plaintiff's medical expenses incurred or to be incurred as a result of his compensable injuries to his left leg, left foot, and left arm as may be required to effect a cure, provide relief, or lessen the period of disability. Plaintiff is not entitled to medical treatment for his neck and back.
5. Defendants shall pay the costs, including expert witness fees of $500.00 to Dr. Langdon A. Hartsock, $500.00 to Dr. Donald Getz and $165.00 to Rachel Boling, if not already paid by prior order.
This 29th day of January, 2007.
 S/_____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 13 
CONCURRING:
 S/_____________________ DIANNE C. SELLERS COMMISSIONER
 S/_____________________ PAMELA T. YOUNG COMMISSIONER *Page 1